IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | NO. 3:19-cr-00204 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| ) | |
| RONALD MARION DANIELS, II ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 91, "Motion"). Via the Motion, Defendant seeks a reduction of his 60-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government has filed a response in opposition (Doc. No. 93, "Response"), arguing that the Motion should be denied because Defendant has not established "extraordinary and compelling reasons for his release" and consideration of the 18 U.S.C. § 3553(a) factors counsels strongly against granting compassionate release.

## BACKGROUND

On August 14, 2019, the Government charged Defendant in an indictment with two counts of perjury, in violation of 18 U.S.C. § 1623. The charges spawned from Defendant's false testimony given during a trial in this district involving the prosecution of several members of the Gangster Disciples street gang. (Doc. No. 3). On June 17, 2020, Defendant pled guilty to both counts of the indictment. (Doc. No. 58). On November 18, 2020, this Court sentenced Defendant to 60 months of imprisonment followed by three years of supervised release. (Doc. No. 88). Defendant has been serving his sentence at Beckley FCI. According to BOP, Defendant's release date is November 28, 2024. *See Federal Inmate Locator*, Bureau of Prisons,

https://www.bop.gov/inmateloc/ (last accessed Jan. 12, 2022).

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[1] a district court *may* under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. §

---

[1] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
  (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).² Therefore, "[u]ntil the Sentencing

---

² Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution

Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[3] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

[3] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

   (3) the kinds of sentences available;

   (4) the kinds of sentence and the sentencing range established for—
     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
       i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
       ii) [in effect at the time of sentencing]

   (5) any pertinent policy statement—
     A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
     B) [and in effect at the time of sentencing]

   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

   (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## ANALYSIS

 A. <u>Extraordinary and Compelling Reasons</u>

  To grant the Motion, the Court would have to determine that "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to persuade the Court to make such a determination. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling."). As noted above, the Court has "*full discretion* to define 'extraordinary and compelling'" in the sense that it is not bound by the reasons listed in policy statement § 1B1.13. *Jones*, 980 F.3d at 1111 (emphasis added).

  Defendant bases his request for compassionate release on the following reasons that he contends are extraordinary and compelling: (1) his mother was in a car accident and now he must care for her; (2) he suffers from arthritis in his hip, high blood pressure, and obesity; (3) he has

"spen[t] his entire time since sentencing in harsh lock-down type situations"; and (4) he has taken steps to rehabilitate himself while in prison. (Doc. No. 91 at 3-4.). The Court will explore each of Defendant's asserted reasons for release in turn.

1. *Defendant's Mother's Need for Care*

Defendant asserts that his mother was in a "serious car wreck, and is in need of surgeries, and needs [Defendant] to care for her as she recovers from her surgeries." (Doc. No. 91 at 4). He argues that these circumstances constitute an extraordinary and compelling reason to grant compassionate release. (*Id*.).

In its Response, the Government argues that Defendant's mother's need for care is not an extraordinary and compelling reason to grant Defendant release pursuant to 18 U.S.C. § 3582(c)(1)(A). First, the Government asserts that Defendant has not met his burden to show that this reason is extraordinary and compelling because Defendant has not offered any evidentiary support of this assertion. (Doc. No. 93 at 4). The Government further argues that even if Defendant had offered such evidence, this reason would still not amount to an extraordinary and compelling reason for release, because "even if [Defendant's] mother were in a car accident, and did suffer the hardships [Defendant] claims, it is settled that such hardships, which are 'neither unique nor unanticipated' for federal inmates, cannot justify a sentencing reduction." (Doc. No. 93 at 4-5 (quoting *United States v. LaMorte*, 940 F. Supp. 572, 578 (S.D.N.Y. Sept. 17, 1996))). The Government contends that "[s]uch hardships are instead 'the inevitable consequence of criminal activity of which any defendant is convicted and imprisoned.'" (*Id*. at 5 (quoting *LaMorte*, 940 F. Supp. at 578)).

The Court agrees with the Government that Defendant's mother's need for care does not constitute an extraordinary and compelling reason for Defendant's release. First, as the

Government notes, Defendant has not provided any evidentiary support that his mother is in need of various surgeries, or that he is her only available caregiver. Without such evidence, Defendant cannot meet his burden to demonstrate that his mother's need for care amounts to an extraordinary and compelling reason.

Additionally, even if he had done so, as another district court has noted, "[m]any, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary." *United States v. Ingram*, No. 14-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019); *see also United States v. Gaskin*, No. 15-352, 2020 WL 7263185, at *4 (E.D. Pa. Dec. 9, 2020) ("[T]he desire to care for [] parents" does not "qualify as extraordinary"). What is true for aging and sick parents is true for injured parents; adverse medical circumstances for an inmate's parents, whatever the cause, is not extraordinary. Defendant has not shown why his stated need to care for his mother is any more compelling than the large percentage of other inmates who have parents that are in need of such kind of assistance.

Moreover, the policy statement from the sentencing guidelines (which is not binding on this Court when determining whether extraordinary and compelling reasons exists, but nevertheless instructive) contemplates compassionate release relating to family circumstances regarding a defendant's children, spouse, or partner, but not for the care of an incapacitated parent. *See* U.S.S.G. § 1B1.13 app. n.1(C). Although § 1B1.13 "is not binding, this policy guidance is highly persuasive authority in resolving motions for compassionate release." *United States v. Hicks*, No. CR 93-97-2 (BAH), 2021 WL 1634692, at *5 (D.D.C. Apr. 27, 2021).

The Court sympathizes with anyone in the reported condition of Defendant's mother. However, as the Government notes above, any hardship on Defendant's family resulting from his failure to care for his mother while incarcerated is "the inevitable consequence" of Defendant's

serious criminal conduct that landed him in incarceration. *LaMorte*, 940 F. Supp. at 578 (citation omitted). Accordingly, Defendant's mother's asserted need for care does not amount to an extraordinary and compelling reason for Defendant's release.

2. *Defendant's Medical Conditions*

Defendant argues that his medical issues (high blood pressure, obesity, and arthritis) "place him at risk of death should and when a variant of COVID-19 spreads through the prison again." (Doc. No. 91 at 4).

The Government responds that Defendant has not provided evidentiary support that reveals that he does in fact suffer from any of the above-mentioned medical conditions. (Doc. No. 93 at 5). But even assuming Defendant has been diagnosed with those medical conditions, the Government argues that Defendant has not met his burden to demonstrate extraordinary and compelling reasons, because Defendant's medical records "reflect that [Defendant] declined to receive both the influenza vaccine and the COVID-19 vaccine." (*Id*.).

The Court agrees. The Court finds that none of Defendant's health conditions rise to the level of extraordinary and compelling reasons, because his medical records indicate that he refused the COVID-19 vaccine. (Doc. No. 95 at 99). The Sixth Circuit recently held that a defendant's access to the COVID-19 vaccine while incarcerated forecloses a finding of extraordinary and compelling reasons based on a defendant's underlying health conditions, unless the defendant can advance a "compelling reason" justifying the defendant's failure to be vaccinated. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). The court explained:

> We need not debate the medical implications of Lemons's [health] condition. For even recognizing the purported seriousness of his condition, the fact remains that, as Lemons acknowledges, the COVID-19 vaccine is available to him in prison. . . .

> Lemons's access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19.

*Id.*; *see also United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (reaffirming *Lemons* and finding that although the defendant's medical conditions were serious, he had access to the COVID-19 vaccine, and therefore his incarceration during the COVID-19 pandemic did not present an extraordinary and compelling reason for a sentence reduction). The Sixth Circuit further explained that if "an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction under § 3582(c)(1)(A)(i) on the grounds that COVID-19 constitutes an extraordinary and compelling justification." *Id*. Thus, given the wide availability of the COVID-19 vaccine, *Lemons* forecloses a substantial portion of inmates' arguments that their underlying health conditions combined with the COVID-19 pandemic constitute extraordinary and compelling reasons for release.

As noted, however, L*emons* does leave open the avenue of asserting a compelling reason for not taking the vaccine despite its availability to the defendant. But this avenue is not available here. The Government has filed Defendant's BOP vaccination record, which reveals that Defendant declined the COVID-19 vaccine. (Doc. No. 95 at 99). In his Motion, Defendant does not offer any reason, let alone a compelling one, for his refusal of the vaccine. Because Defendant

was offered and refused the vaccine, and he did not present a compelling reason for declining the vaccine, his health conditions coupled with the COVID-19 pandemic do not amount to an "extraordinary and compelling reason" warranting a sentence reduction. *Lemons*, 15 F.4th at 751.

Moreover, it is beyond dispute that persons outside of prison are extremely susceptible to the current COVID-19 variant (Omicron). So to the extent that Defendant's argument is that he needs to be released into the community to better evade COVID-19, the argument is a non-starter because there is no reason to conclude that his risk of infection from COVID-19 would be reduced were he released from prison.

Accordingly, the Court finds that Defendant has not met his burden to demonstrate that his medical conditions are extraordinary and compelling reasons for his release.

3. *Conditions at Defendant's Prison*

Defendant argues that the conditions in which he is confined rise to the level of an extraordinary and compelling reason for release, because "he has been having to spend his entire time since sentencing in a lock down type situation, which are not healthy for someone who is already obese." (Doc. No. 91 at 4).

In Response, the Government argues that it "presume[s] that the 'harsh lock-down type situations' to which [Defendant] refers are quarantining measures taken by the BOP to keep prisoners safe during the COVID-19 pandemic [and] [t]he mere imposition of those measures in a facility which houses inmates cannot justify the compassionate release of those inmates[.]" (Doc. No. 93 at 6). "By that logic, all such inmates in a given facility would be entitled to compassionate release." (Id.). Thus, the Government argues that the conditions in which Defendant is confined do not rise to the level of an extraordinary and compelling reason to grant compassionate release.

Whether Defendant is "in a lock down type situation," due to BOP's response to the COVID-19 pandemic, or for other reasons, the Court finds that the conditions of Defendant's confinement do not constitute an extraordinary and compelling reason. "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and inmates cannot expect the "amenities, conveniences and services of a good hotel," *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). And to the extent that Defendant's complaints do relate to quarantine measures taken by BOP in response to the COVID-19 pandemic (which the Government suggests), such measures implemented to prevent the spread of COVID-19 in the prison system are to be encouraged, not deterred. Moreover, the Government is correct that if this Court were to accept this asserted basis for compassionate release, this basis would apply to all inmates in a BOP facility that are subject to similar COVID-19 counter measures, and this Court rejects any suggestion that all inmates at such a facility are entitled to compassionate release. Accordingly, the Court finds that the conditions of Defendant's confinement does not constitute an extraordinary and compelling reason for his release.

4. *Defendant's Rehabilitation*

Defendant's final asserted extraordinary and compelling reason is that he has taken "steps to rehabilitate himself while in prison, *e.g.*, working, programming, and maintaining clear conduct." (Doc. No. 91 at 4).

In response, the Government argues that Defendant presents no evidence of his alleged in-custody rehabilitation, and his vague references to "working" and "programming" do not justify a sentence reduction. (Doc. No. 93 at 5). Further, the Government argues that rehabilitation "while commendable," is something "the Court should expect of every Defendant it sentences." (*Id.*).

Thus, the Government argues that Defendant's alleged effort to rehabilitate himself does not constitute an extraordinary and compelling reason to grant compassionate release. (*Id.*).

Here, Defendant does not explain in detail what his efforts to rehabilitate himself are or provide evidentiary support for such rehabilitation. However, even if he had done so, the Sixth Circuit has explained that "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)); *see also United States v. McCall*, 20 F.4th 1108, 1114 (6th Cir. 2021). The Court found above that none of Defendant's other asserted reasons for release rose to the level of extraordinary and compelling, and the Court here notes further that none of these reasons even registered in any significant way on the "extraordinary and compelling" scale. So Defendant's rehabilitation would have to be considered extraordinary and compelling standing alone, which as just noted would be inconsistent with congressional intent. Therefore, the Court finds that Defendant's rehabilitation is not an extraordinary and compelling reason to grant compassionate release.

5. *Conclusion*

Accordingly, the Court finds that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release. This conclusion applies when considering each of his asserted extraordinary and compelling reasons separately, or cumulatively. Thus, his Motion is denied on this basis, and the Court need not proceed to the remaining steps of the compassionate release analysis (*i.e.*, an analysis of the Section 3553(a) factors).

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release.

For these reasons, the Motion (Doc. No. 91) will be **DENIED**.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE